**STATE of Delaware,**

v.

**Michael CHAPLIN, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Feb. 12, 1981.

Decided Feb. 17, 1981.

Stephen M. Walther, Deputy Atty. Gen., Dept. of Justice, Wilmington, for State.

Joseph B. Green, Asst. Public Defender, Wilmington, for defendant.

O'HARA, Judge.

In the aftermath of the jury verdict, returned February 12, 1981, finding the defendant guilty of First Degree Murder, a question has arisen with respect to the request of the State regarding instructions to be given to the jury in the punishment hearing scheduled for Tuesday, February 17, 1981.

The history of capital punishment in this country is an extensive one and will not be reviewed here except for more recent events which are relevant to an understanding of the issue which has been raised in this case.

The United States Supreme Court in the case of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, decided June 29, 1972, determined that the penalty of death may not be imposed under sentencing provisions that create a substantial risk that the punishment would be imposed in a manner which might be described as arbitrary or capricious. Thereafter, the same Court, on July 2, 1976, in the case of *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859, had occasion to examine the sentencing procedures established by the State of Georgia to determine whether or not they met the constitutional test set forth in the *Furman* decision. The Court upheld the Georgia system, with respect to the imposition of the death penalty, holding that it did not violate the Eighth and Fourteenth Amendments to the United States Constitution.

As a consequence of the *Gregg* decision, many States throughout the country quickly enacted legislation approximating the system established in Georgia in an effort to also meet the mandate of the *Furman* decision and the requirements of the Eighth and Fourteenth Amendments. Delaware was one of those States adopting what is now § 4209 of Title 11 of the Delaware Code, which became effective May 14, 1977.

In summary form, § 4209 provides that when a jury finds a defendant guilty of Murder in the First Degree, there will be a second, or bifurcated hearing, before the same jury, for the purposes of determining the punishment which should be meted out to the defendant. A sentence of death, under the Delaware law, cannot be imposed unless the jury unanimously finds, beyond a reasonable doubt, that at least one statutory aggravating circumstance existed and,

also, that they unanimously recommend that a sentence of death be imposed. If the jury cannot unanimously find that at least one statutory aggravating circumstance exists and cannot unanimously recommend death, then the Court automatically imposes a sentence of life imprisonment without benefit of probation or parole

In subsection (e)(1) of § 4209 the Delaware law sets forth a list of aggravating circumstances which, in its original form, were 19 in number, at least one of which the jury must find to have existed before the sentence of death may be imposed in any case. In this case the State requests that the Court instruct the jury with respect to the aggravating circumstance described in § 4209(e)(1)n (referred to hereafter as "(e)(1)n"). The defendant, on the other hand, objects to the State's requested instruction contending that the aggravating circumstance described in § (e)(1)n violates the Eighth and Fourteenth Amendments to the United States Constitution and the standards enunciated in the *Furman* decision.

The aggravating circumstance set forth in § (e)(1)n reads as follows:

"n. The murder was outrageously or wantonly vile, horrible or inhuman."

§ (e)(1)n is concededly the only statutory aggravating circumstance which could possible apply to the facts presented in the case, so that the issue joined is whether or not this particular aggravating circumstance meets the constitutional test.

In the *Gregg* case the United States Supreme Court upheld the general scheme or system adopted in Georgia, in cases involving a potential death penalty, but was not called upon specifically to rule upon the aggravating circumstance presented in this case. It is interesting to note, however, that in the *Gregg* case, the jury, at trial, was presented with three possible aggravating circumstances, including the seventh statutory aggravating circumstance listed in the Georgia statute, (referred to hereafter as "§ (b)(7)"), which authorized the imposition of the death penalty if the murder was "outrageously or wantonly vile, horri-

ble or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." The Georgia jury, in its verdicts found that the other two aggravating circumstances presented to them did, in fact, exist, but did not make such a finding with respect to § (b)(7) statutory aggravating circumstance. The Supreme Court, nevertheless, in its opinion, dealt with this particular aggravating circumstance because the defendant attacked it as part of his argument that the entire statutory scheme under the Georgia law should be found unconstitutional. The Supreme Court disagreed that this aggravating circumstance was so broad that capital punishment could be imposed in any murder case, saying there was no reason to assume that the Supreme Court of Georgia would construe any murder case to involve depravity of mind or an aggravated battery. The Court did, therefore, seem to have sustained the legitimacy of the Georgia § (b)(7) statutory aggravating circumstance at least to the extent of holding that it was not unconstitutional on its face.

The § (b)(7) statutory aggravating circumstance under the Georgia law is similar to that found in § (e)(1)n under the Delaware law, with the exception that the language "in that it involved torture, depravity of mind, or an aggravated battery to the victim", appearing at the end of the Georgia statutory circumstance, does not appear at all in the Delaware statutory circumstance. The question would then appear to be whether this difference in language would affect the legitimacy of the Delaware law in view of the *Gregg* holding which sustained the broader language.

Assistance in resolving this issue can be gained from the decision of the United States Supreme Court in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398, decided May 19, 1980. In the *Godfrey* case the defendant was found, within a short period of time, to have murdered his estranged wife by shooting her through a window and then his mother-in-law, in direct confrontation. He was convicted of Murder in the First Degree as to both kill-

ings. The case was presented to the Georgia jury with the only aggravating circumstance possibly applying being § (b)(7). The jury found that circumstance to apply to both murders involved and the defendant was sentenced to death. Although the jury had been instructed by the Court as to the language of § (b)(7), in its extended form, as I have read it to you, the jury, nevertheless, in returning its verdicts said that the aggravating circumstance as to each conviction was that the offense was "outrageously or wantonly vile, horrible or inhuman." The jury did not include in its findings the additional language found in § (b)(7) but, in fact, set forth their findings in the exact language found in the Delaware statute. The United States Supreme Court concluded that the sentence of death in the *Godfrey* case was based on nothing more than a finding that the offense was "outrageously or wantonly vile, horrible or inhuman," and held that:

"There is nothing in these few words standing alone that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence . . . . . There is no principled way to distinguish this case in which the death penalty was imposed, from the many cases in which it was not. Accordingly, the judgment of the Georgia Supreme Court, insofar as it leaves standing the petitioner's death sentences, is reversed."

In striking down the death penalty sentences in the *Godfrey* case, the United States Supreme Court pointed out that to meet constitutional requirements, a State's system providing for the death penalty necessarily must include an independent review of the record by the State's highest Court to prevent death sentences being imposed by or in the uncontrolled discretion of a jury. The Georgia system does provide for such a review but in the *Godfrey* case itself the jury, in its verdicts, did not specify that they found all of the matters required under the language of § (b)(7) making it impossible for the reviewing Court to determine whether the jury concluded that the evidence presented would support the particular aggravating circumstance found.

The Court in examining the evidence concluded that, in any event, it would not have supported the full statement of the standard required under § (b)(7). The United States Supreme Court, having found the language, which we now find is the entirety of the language of Delaware's § (e)(1)n, to be insufficient to meet the constitutional test, it would seem to follow that that section of the Delaware statute is unconstitutional and cannot be presented to a jury for consideration as an aggravating circumstance.

While this particular aggravating circumstance has not been ruled upon by the Delaware Supreme Court, the Delaware Court has been called upon to determine whether or not other of the statutory aggravating circumstances found in § 4209(e)(1) are constitutional. In *State v. White*, Del.Supr., 395 A.2d 1082 (1978), the Delaware Supreme Court was called upon to determine the validity of statutory aggravating circumstances described solely as the victim being "elderly" or "defenseless" [subsection (e)(1)r and s]. The Court in the *White* case had this to say with respect to these two statutory circumstances:

"The defendants assert that the aggravating circumstances which are designated in our statute simply as 'elderly' and 'defenseless' victims, without further definition, are unconstitutionally broad and vague; that those aggravating circumstances do not provide adequate guidelines to channel the discretion of the sentencing authority sufficiently to constitute the clear and objective statutory standard mandated by *Gregg* and its companion cases. We agree.

\*     \*     \*     \*     \*     \*

. . . . It cannot be said that the words have a common and ordinary meaning sufficiently definite to meet their usage in the context of the Statute.

\*     \*     \*     \*     \*     \*

Manifestly, words such as 'elderly' and 'defenseless', without legislative definition of scope and meaning, are susceptible of widely differing interpretations.

Thus, by the use of such vague terminology, there is substantial risk that sentencing authorities will inflict the death penalty in an arbitrary and diversified manner. Such vague terms have particular constitutional shortcomings and are particularly unacceptable, when they are applied to the imposition of the death penalty.

At the risk of objectional repetition, the crux of the matter is this: The cornerstone of the Eighth and Fourteenth Amendment guarantee against cruel and unusual punishment is that the death penalty not be imposed in a 'freakish and wanton' or arbitrary and capricious manner. It is essential that the jury, or judge where applicable, must be provided by the Statute with clear and objective standards such that their discretion may not be misguided."

The language of our Supreme Court in the *White* case can and must apply with equal force to the language of § (e)(1)n. It is this Court's conclusion, therefore, that such language is unconstitutionally broad and vague. It is not without significance that the United States Supreme Court in *Godfrey* took time to note that all other statutory aggravating circumstances under the Georgia law are "considerably more specific or objectively measurable than § (b)(7)," reciting all nine of such circumstances. An identical comment would apply to all the aggravating circumstances under Delaware law after striking § (e)(1)n, and the two involving "elderly" and "defenseless".

Defendant's objection to the requested instruction on § (e)(1)n must be sustained.

IT IS SO ORDERED.