STATE of Delaware,

v.

**Brian STECKEL, Defendant.**

**Criminal Action Nos. IN96–06–1760, 1761, 1763, 1765, through 1770 and 1773.**

Superior Court of Delaware,
New Castle County.

Submitted: Oct. 17, 1996.
Decided: Dec. 11, 1996.

Timothy Barron and Thomas Pedersen, Department of Justice, Wilmington, for the State of Delaware.

Jerome Capone and Joseph Gabay, Wilmington, for Brian Steckel.

## OPINION

CARPENTER, Judge.

This is the Court's opinion disposing of the defendant's final Motion pending in this case, the Motion to Strike the Death Penalty and Dismiss or Merge Counts.[1] The motion challenges the constitutionality of the death penalty statute, and also contends that certain counts of the indictment should be merged for sentencing purposes. The issues raised regarding the death penalty will be addressed *infra*, however, the parties continue to discuss resolving the merger issue without court intervention and thus, that issue will be left until the date of sentencing, January 8, 1997.

## I. Procedural Posture

Mr. Steckel was originally indicted on two counts of Burglary Second Degree, two counts of Assault Third Degree, one count of Attempted Murder First Degree, one count of Unlawful Sexual Penetration First Degree, one count of Unlawful Sexual Intercourse First Degree, one count of Arson First Degree, and five counts of Murder First Degree. He was then reindicted on the additional count of Aggravated Harassment. The entire indictment, except Count XIV, Aggravated Harassment, relates to the September 2, 1994 assault, rape and murder of Sandra Lee Long, and the burning of her Driftwood Club apartment. Count XIV relates to obscene phone calls received by Susan Gell, the defendant's self-proclaimed next victim, between August 2 and August 13, 1994. After extensive discussions with defense counsel, the State *nolle prossed* five counts of the indictment: counts III and V, charging Assault Third Degree; count IV, charging Attempted Murder First Degree; and two counts of Felony Murder, counts XII and XIII, alleging criminal negligence. Accordingly, Mr. Steckel was tried on two counts of Burglary Second Degree, one count of Unlawful Sexual Penetration First Degree, one count of Unlawful Sexual Intercourse First Degree, one count of Arson First Degree, three counts of Murder First Degree, and one count of Aggravated Harassment.

Jury selection in the case began on September 10, 1996 and continued until September 17, 1996. The trial commenced on September 18, 1996 and lasted until October 1, 1996. The jury deliberated for approximately six hours over the course of two days and delivered their verdict on October 2, 1996: guilty on all counts of the indictment. The penalty hearing began on Tuesday, October 8, 1996 and was completed on Wednesday, October 16, 1996. The jury returned its sentencing recommendation on Thursday, October 17, 1996 and found that the aggrava-

---

1. On September 17, 1996 the Court issued an opinion disposing of two pre-trial defense motions: the Motion to Suppress and the Motion to Sever. *See State v. Steckel,* Del.Super., Cr. A. No. IN96–06–1760, Carpenter, J., 1996 WL 659483 (Sept. 17, 1996) (Mem.Op.). At the time that opinion was issued, the Court believed the matters presented in this motion to have been resolved by the parties. Unfortunately, that agreement never materialized. Thus, the Court now rules on the motion since the defendant's conviction makes the issue ripe for decision.

ting circumstances outweighed the mitigating circumstances by a vote of eleven to one.

## II. Discussion

It is the three convictions for first degree murder which render Mr. Steckel eligible for the death penalty pursuant to 11 *Del.C.* §§ 636 and 4209(a). Consequently, the defendant has challenged the constitutionality of the death penalty statute as written and as applied to him in this case. The defendant offers several arguments in support of his motion. First, he contends that the Delaware statute provides for so many statutory aggravating circumstances that it fails to adequately narrow the class of persons eligible for the death penalty. As such, the defendant maintains that the State has inappropriately stacked the statutory aggravating circumstances where the death penalty may be imposed, and thus has reached a point where it is violative of the Eighth Amendment of the U.S. Constitution. Second, the defendant asserts that the statute is violative of both State and federal constitutional standards in that it fails to provide for any consideration of mercy. The defendant's contentions are without merit and will be addressed *seriatim.*

### A.

The defendant first contends that the present statute is violative of federal constitutional standards in that it fails to adequately narrow the class of individuals who may be subject to the death penalty. Thus, the defendant maintains, Delaware's statute is constitutionally infirm due to the litany of aggravating circumstances provided for in the statute which, he argues, qualifies most convicted first degree murderers for capital punishment. To appropriately consider the defendant's argument, a brief overview of the evolution of the present statute is necessary.

The Delaware death penalty statute has been amended several times in recent years, and faced constitutional challenges at every turn.[2] The basic constitutional framework

for capital punishment was established by the United States Supreme Court in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), when it approved the constitutionality of death penalty laws which limited the discretion of the sentencing jury, but invalidated several mandatory death penalty statutes, including the Delaware statute in place at that time. The laws which were upheld in *Gregg* included three common features: (1) a bifurcated trial; (2) a requirement that juries find the existence of specific aggravating circumstances and consider mitigating circumstances before imposing the death penalty; and (3) expedited appellate review of all jury impositions of death sentences. *See Lawrie v. State,* Del.Supr., 643 A.2d 1336, 1345 (1994), *cert. denied,* 513 U.S. 1048, 115 S.Ct. 646, 130 L.Ed.2d 551 (1994). It was these guidelines which formed the pattern for the Delaware death penalty statute enacted in 1977. *See id.* at 1346 ("The General Assembly modeled § 4209 after the Georgia statute which the United States Supreme Court sanctioned in *Gregg,* and thereby incorporated the three aspects delineated above into Delaware's death penalty procedure.")

In 1991, significant changes were made to Delaware's statutory scheme regarding the imposition of capital punishment. Prior to 1991, a unanimous jury verdict was required to impose the death penalty. However, the new statute disposed of the unanimous verdict requirement and placed the ultimate decision-making responsibility in the trial judge. *See Shelton v. State,* Del.Supr., 652 A.2d 1, 6–7 (1995). These revisions were drafted to emulate the Florida statute that was upheld in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). *See* 68 Del. Laws Ch. 181, Synopsis (stating "this bill generally follows the Florida statute as approved by the United States Supreme Court"). The revised law transformed the jury's role in a capital murder trial from the absolute sentencing authority to that of an advisory capacity. When the amended 1991 statute was tested in *State v. Cohen,* Del. Supr., 604 A.2d 846 (1992), the Delaware

---

**2.** *See, e.g., Sullivan v. State,* Del.Supr., 636 A.2d 931 (1994); *State v. Cohen,* Del.Supr., 604 A.2d 846 (1992); *State v. Ferguson,* Del.Super., Cr. A.

No. IN91–10–0576, Gebelein, J., 1995 WL 862123 (Aug. 25, 1995); *State v. Deputy,* Del.Super., 644 A.2d 411 (1994).

Supreme Court found "the new law valid in *all* respects." *Id.* at 848 (emphasis added). Thus, it is clear that the statute as amended in 1991 is constitutionally sound, and therefore, the Court need only address the most recent amendments to the statute.

In 1994, the General Assembly expanded the list of statutory aggravating factors by adding sections (s) through (u) to 11 *Del.C.* 4209(e)(1).[3] They are:

(s). The victim was a child 14 years of age or younger, and the murder was committed by an individual who is at least 4 years older than the victim.

(t). At the time of the killing, the victim was or had been a nongovernmental informant or had otherwise provided any investigative, law enforcement or police agency with information concerning criminal activity, and the killing was in retaliation for the victim's activities as a nongovernmental informant or in providing information concerning criminal activity to an investigative, law enforcement or police agency.

(u). The murder was premeditated and the result of substantial planning. Such planning must be as to the commission of the murder itself and not simply as to the commission or attempted commission of any underlying felony.

69 Del.Laws Ch. 439 (codified at 11 *Del.C.* § 4209(e)(1)(s)–(u)).

Finally, in 1995, the General Assembly expanded the list of statutory aggravating circumstances to twenty-two by adding section (v) dealing with "hate crime" offenses.[4] Since this amendment was not effective until July 6, 1995, and because the Court believes the defendant has no standing to object to this amendment, the Court finds it inapplicable to the case at bar. Therefore, the Court will not consider the constitutionality of this amendment or its effect on the overall consti-

tutionality of the statute. As a result, the Court's first task is to review the constitutionality of the 1994 amendments.

*B.*

The principle that statutory aggravating circumstances must genuinely narrow the class of persons eligible for the death penalty stems from the concern expressed by the United States Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) that "the worst criminals or the criminals who commit the worst crimes are selected for this punishment." *Id.* at 294, 92 S.Ct. at 2754 (Brennan, J., concurring). Later, in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the United States Supreme Court expounded upon "the need for legislative criteria to limit the death penalty to certain crimes." *Zant v. Stephens,* 462 U.S. 862, 877–78 n. 15, 103 S.Ct. 2733, 2742 n. 15, 77 L.Ed.2d 235 (1983). "The decision that capital punishment may be the appropriate sanction in extreme cases is an expression of the community's belief that certain crimes are themselves so grievous an affront to humanity that the only adequate response may be the penalty of death." *Gregg,* 428 U.S. at 184, 96 S.Ct. at 2930. This community expression is legislatively reflected by the establishment of statutory aggravating circumstances that would justify the imposition of death if found to exist.

It is thus required before capital punishment may be considered, that the defendant first be convicted of the crime of Murder First Degree, *and* that at least one of the statutory aggravating circumstances established by the General Assembly be applicable to the defendant's actions. This does not mean, however, that the inquiry comes to an end by the General Assembly's decision to

---

**3.** The Court notes that since the State only sought to prove one statutory aggravating circumstance, 11 *Del.C.* § 4209(e)(1)(j), Mr. Steckel is not subject to the additional factors added in 1994. However, the factors from the 1994 amendments became effective July 14, 1994 and would be applicable to this defendant if the facts of the case so warranted, since the murder of Sandra Lee Long occurred September 2, 1994.

**4.** Section (v) states the following: The murder was committed for the purpose of interfering with the victim's free exercise or enjoyment of any right, privilege or immunity protected by the First Amendment to the United States Constitution, or because the victim has exercised or enjoyed said rights, or because of the victim's race, religion, color, disability, national origin or ancestry. 70 Del. Laws Ch. 137 (codified at 11 *Del.C.* § 4209(e)(1)(v)).

enact certain statutory aggravating circumstances. To avoid imposing the death penalty in a "wanton or freakish manner," the discretion as to whether to impose the death penalty "must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Lewis v. Jeffers*, 497 U.S. 764, 774, 110 S.Ct. 3092, 3099, 111 L.Ed.2d 606 (1990) (quoting *Gregg, supra*, 428 U.S. at 189, 96 S.Ct. at 2932). It is the task of the General Assembly to establish aggravating circumstances to "channel the sentencer's discretion by 'clear and objective standards' that provide specific and detailed guidance." *Id.* (quoting *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980)).

The United States Supreme Court recently reiterated the two requirements that must be established for an aggravating circumstance to be found constitutional in *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994).

> First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. *See Arave v. Creech*, 507 U.S. 463, 473, 113 S.Ct. 1534, 1542, 123 L.Ed.2d 188 (1993) ("If the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty, the circumstance is constitutionally infirm"). Second, the aggravating circumstance may not be unconstitutionally vague. *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764–1765, 64 L.Ed.2d 398 (1980); *see Arave, supra*, 507 U.S., at 471, 113 S.Ct., at 1541 (court " 'must first determine whether the statutory language defining the circumstance is itself too vague to provide any guidance to the sentencer' ") (quoting *Walton v. Arizona*, 497 U.S. 639, 654, 110 S.Ct. 3047, 3057–58, 111 L.Ed.2d 511 (1990)).

*Tuilaepa*, 512 U.S. at 972, 114 S.Ct. at 2635.

Our own Supreme Court has also articulated the constitutional criteria by which statutory aggravating circumstances must be judged. In *State v. White*, Del.Supr., 395 A.2d 1082 (1978), the Court was faced with several challenges to the 1977 death penalty statute, including a constitutional challenge to two statutory aggravating circumstances. There, the defendant alleged that the provisions of former sections (r) and (s) were unconstitutionally vague due to the fact that the terms "elderly" and "defenseless" were not legislatively defined. The Court agreed and held "the constitutionality of a death penalty statute rests upon the premise that the sentencing authority's discretion in imposing the death penalty is guided and channeled by clear and objective statutory standards." *White*, 395 A.2d at 1090. In striking down those provisions as unconstitutionally vague, the Court quoted from the Supreme Court of Georgia: "[w]henever a statute leaves too much room for personal whim and subjective decision-making without a readily ascertainable standard or minimal, objective guidelines for its application, it cannot withstand constitutional scrutiny." *Id.* (quoting *Arnold v. State*, 236 Ga. 534, 224 S.E.2d 386, 391 (1976)). The danger, said the Court, is that "by the use of such vague terminology, there is substantial risk that sentencing authorities will inflict the death penalty in an arbitrary and diversified manner." *Id.* at 1091.[5]

In *State v. Chaplin*, Del.Super., 433 A.2d 327 (1981), *aff'd*, Del.Supr., 433 A.2d 325 (1981), the constitutionality of another statutory aggravating circumstance was examined. Former section (n) provided that "the murder was outrageously or wantonly vile, horrible or inhuman." Relying on the United States Supreme Court case of *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the Court found that the language of this factor was unconstitutional because "[t]here is nothing in these few words standing alone that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence." *Chaplin*, 433 A.2d at 329.[6]

---

**5.** Section (e)(1)(r) now reads: "The victim was 62 years of age or older."

**6.** Former section (e)(1)(n) was later amended to correct the infirmity by adding more specific language to the Code. The current version reads as follows: "The murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, use of an

After carefully reviewing the statutory aggravating circumstances added in 1994, the Court finds that they are constitutionally permissible under the "clear and objective" standard of *White, Chaplin,* and the United States Supreme Court cases discussed above. Factor (e)(1)(s) clearly states that this statutory aggravating circumstance applies to cases where the victim is a child of age 14 or younger, and the defendant is at least four years older than the victim. *See State v. Demby,* Del.Supr., 672 A.2d 59 (1996) (interpreting section (s) and holding that the victim's age is an aggravating factor when the victim is under the age of 15). This aggravating factor reflects an appropriate legislative intent to harshly punish those who pray on the youth of our community. This section is clearly written, particularly now that the age issue was resolved in *Demby,* and is easily applied in a consistent and non-arbitrary fashion.

Factor (e)(1)(t) addresses the killing of informants in retaliation for providing information to the law enforcement community. The Court considers this aggravating circumstance to be a suitable response to violent and egregious conduct that undermines the foundation of the criminal justice system. Again, this factor is clearly defined and can be applied in a consistent and non-arbitrary manner.

Finally, factor (e)(1)(u) addresses the murder committed after substantial planning and aforethought. It is difficult to envision a more appropriate aggravating factor than the killing of another human being that is the result of a carefully planned, contemplated and executed strategy. While its application is highly dependent on the facts of each case, and by its nature it may be one of the more difficult factors to establish, this does not mean that the jury and court would be unable to carefully and consistently apply this aggravating factor in an objective manner. Again, the Court finds this aggravating factor to be clear, precise, and capable of being applied in a non-arbitrary fashion.

All of these aggravating factors present separate circumstances which may be applied in a "clear and objective" manner to a unique subclass of defendants as required under the law. Further, they are not written in a vague manner that would lead to the arbitrary or indiscriminate imposition of the death penalty. Therefore, the Court is not convinced that the statutory aggravating circumstances discussed above are inconsistent with the constitutional mandate set forth in *Gregg, White,* and their progeny; nor is the Court persuaded that the most recent amendments to the death penalty statute render it constitutionally infirm under either state or federal grounds. Accordingly, the Court finds the 1994 amendments to 11 *Del.C.* § 4209(e) constitutional.

### C.

While the Court has found each of the aggravating circumstances discussed above to be constitutional standing alone, it must now address the defendant's argument that the State has inappropriately stacked the statutory aggravating circumstances "so as to virtually eliminate the likelihood of any Murder First Degree defendant not being eligible for a death sentence." In other words, is there a point where the cumulative effect of the number of statutory aggravating circumstances renders the statute as a whole unconstitutional?

While the United States Supreme Court has not specifically examined this issue, the defendant's argument has some support in the language of the cases addressing other death penalty matters. For example, in *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), the Court examined a defendant's challenge to the Florida statute which allows a judge to impose the death penalty even when the jury recommends a life sentence. There the Court stated, "[i]f a State has determined that death should be an available penalty for certain crimes, then it must administer that penalty in a way that can rationally distinguish between those individuals for whom death is an

---

explosive devise or poison or the defendant used such means on the victim prior to murdering the

victim." 11 *Del.C.* § 4209(e)(1)(*l*).

appropriate sanction and those for whom it is not." *Id.* at 460, 104 S.Ct. at 3162. In *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Court considered the sentencing implications for a defendant who was sentenced to death based on three aggravating circumstances, where one of those aggravators was subsequently held to be unconstitutional. Again, the Court emphasized, "an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Id.* at 877, 103 S.Ct. at 2742.

Given the logic of the defendant's argument, a search was conducted of the 38 states which have the death penalty to see how Delaware compared in the number of aggravating circumstances in effect in each state. This search revealed that Delaware does have more statutory aggravating circumstances in sheer number than any other state. Those closest to Delaware include California with 19; Alabama with 18; Missouri, Pennsylvania and Utah with 17; and Illinois and Indiana with 15. Of the states listed above, California, Alabama and Missouri's statutes have reached the United States Supreme Court and been upheld. *See Tuilaepa, supra; Harris v. Alabama,* 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995); *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). However, a pure mathematical calculation as to the number of aggravating circumstances can be misleading. A more thorough review reveals that the Delaware statute separately lists certain aggravating circumstances that are incorporated together as one in other states. Additionally, some factors found as aggravators in other states have not been included in the Delaware statute. At best, this information leads one to reasonably conclude that Delaware is not out of line, nor has it reached the point where the defendant's argument would perhaps have merit.

While the Court does not dispute that at first blush the defendant's argument appears logical, it is disturbed by the prospect of how one determines the point at which the number of aggravating circumstances causes the death penalty statute to be generally unconstitutional. Is the Court to engage in some mathematical calculation as to who might be covered by the statute and who is not; and if so, what would be reasonable and logical factors to include in the formula? Can the Court arbitrarily declare that fifty aggravating circumstances is too many but forty-nine is permissible? Even assuming one could ever create a tool that would measure the percentage of defendants eligible for capital punishment, where is the dividing line of constitutionality and who makes that decision?

The Court believes these questions demonstrate why the only appropriate, logical, practical and reasonable means to determine the constitutionality of aggravating circumstances in a death penalty statute is to only consider the parts of the statute applicable to the defendant and to the specific facts of each case, and not the statute relative to the universe of potential defendants. When one considers that seldom is a defendant ever alleged to be death-eligible because of more than a few aggravating circumstances, the logic of this limitation becomes apparent. In other words, is it reasonable for a defendant who has become eligible for the death penalty because he qualifies under one aggravating circumstance to become ineligible because of a number of other factors completely irrelevant and unrelated to his actions? The Court believes that such a result is not mandated by the Constitution nor would it serve the interest of assuring that justice has been performed.

In this case, the State only sought to prove a single statutory aggravating circumstance in the penalty phase. That is, that "the murder was committed while the defendant was engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any degree of rape, unlawful sexual intercourse, arson, kidnapping, robbery, sodomy or burglary." 11 *Del.C.* § 4209(e)(1)(j). This aggravating factor has previously been upheld as constitutional, and the Court's inquiry has been ful-

filled.[7]

The fact that the legislature has set forth twenty-two specific statutory aggravating circumstances manifests society's concern that certain actions are so heinous as to be worthy of capital punishment. The Court believes that in promulgating this legislation, the General Assembly has done so with due regard for the gravity of the subject matter. Therefore, the defendant's challenge to the death penalty statute as articulated above is DENIED.

### D.

■ The defendant next contests the constitutionality of the death penalty statute based on the alleged failure of the statute to provide for any consideration of mercy. The identical issue was squarely addressed by this Court in *State v. Ferguson,* Del.Super., Cr. A. No. IN91–10–0576, Gebelein, J., 1995 WL 413269 (Apr. 7, 1995) (Mem.Op.) (discussing the merits of the argument despite the fact that it was procedurally barred under Rule 61). This Court is confident that the legislature has gone to great pains to draft a statute that complies with the constitutional requirements as discussed above. In dismissing Ferguson's argument, Judge Gebelein pointed out that those requirements include the mandate that the death penalty not be imposed with "unfettered sentencing discretion," nor must it be "meted out arbitrarily and capriciously." *Id.* (quoting *Dougan v. State,* Fla.Supr., 595 So.2d 1, 4 (1992)).

■ In guiding the jury's sentencing deliberations and recommendation in the penalty phase of a capital case, the Court is compelled to give an instruction that precludes the consideration of sentiment, conjecture, sympathy, passion, prejudice, or public feeling as both irrelevant and improper. *See California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987). Despite the significance of that instruction, the defendant is given the unlimited opportunity to present other valid mitigating evidence "as to any matter that the Court deems relevant and admissible to the penalty to be imposed." 11 *Del.C.* § 4209(c). That evidence frequently includes poignant and moving testimony from the defendant's family as to the contribution and value which a defendant may continue to have for his family; medical testimony regarding any psychological and cognitive defects with which a defendant may be afflicted;[8] and alcohol and substance abuse by a defendant.[9] These are just a few examples of commonly accepted mitigating circumstances which a jury may properly consider.

In addition to the guidance provided by our own legislature and judiciary, the United States Supreme Court has also frowned upon the consideration of such sentiment by jurors in death penalty proceedings. In *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), the Court held:

It is no doubt constitutionally permissible, if not constitutionally required, for the State to insist that "the individualized assessment of the appropriateness of the death penalty [be] a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence." . . . It would be very difficult to reconcile a rule allowing the fate of a defendant to turn on the vagaries of particular jurors' emotional sensitivities with our longstanding recognition that, above all, capital sentencing must be reliable, accurate, and nonarbitrary. At the very least, nothing . . . prevents the State from attempting to ensure reliability and nonarbitrariness by requiring that the jury consider and give effect to the defendant's mitigating evidence in the form of a "reasoned moral response," rather than an emotional one. The State must not cut off full and fair consideration of mitigating

---

7. The Court also notes that this case does not reflect any action by the prosecution to "stack" aggravating circumstances in an attempt to inappropriately influence either the jury or the Court. In fact, the State exhibited wise and prudent prosecutorial discretion in only arguing for one aggravating circumstance when the possibility existed for several others to also apply.

8. For cases acknowledging family background as a valid mitigating circumstance see *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) and *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

9. *See Fead v. State,* Fla.Supr., 512 So.2d 176 (1987) (recognizing alcohol abuse as a valid mitigating circumstance).

evidence; but it need not grant the jury the choice to make the sentencing decision according to its own whims or caprice.

*Id.* at 492–93, 110 S.Ct. at 1262–63 (citations omitted). To the extent that the jury desires to express its compassion for the defendant, it does so in its balancing of the aggravating and mitigating circumstances, and in its ultimate recommendation for a life sentence. Nothing more is required in order to achieve the defendant's goal of persuading the jury that it should be merciful to the defendant and reject a sentence of death. Therefore, the defendant's final challenge to the death penalty statute is DENIED.

### III. Conclusion

For the foregoing reasons the defendant's Motion to Strike the Death Penalty as a potential punishment in this case is hereby DENIED.

IT IS SO ORDERED.