**Craig ZEBROSKI, Defendant Below–Appellant,**

**v.**

**STATE of Delaware, Plaintiff Below–Appellee.**

**No. 186, 2009.**

Supreme Court of Delaware.

Submitted: Dec. 9, 2009.
Decided: March 9, 2010.

**1116**

Jennifer–Kate Aaronson, Esquire, (argued) of Aaronson & Collins, LLC, Wilmington, Delaware, for the Appellant.

Paul R. Wallace, Esquire, (argued), Loren C. Meyers, Esquire, Gregory E. Smith, Esquire, of the Department of Justice, Wilmington, Delaware, for the Appellee.

Before STEELE, Chief Justice, HOLLAND, JACOBS, and RIDGELY, Justices, and SMALLS, Chief Judge,[1] constituting the Court en Banc.

1. Sitting by designation pursuant to Art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4.

RIDGELY, Justice:

Defendant–Appellant Craig Zebroski appeals from the Superior Court's denial of his second motion for postconviction relief from his conviction and death sentence for murder in the first degree. Zebroski raises three arguments on appeal. First, he contends that the Superior Court erred in ruling that his claims of ineffective assistance of his trial and postconviction counsel were procedurally barred by Superior Court Rules 61(i)(2) and (4). Second, he contends that the Delaware Constitution guarantees the effective assistance of postconviction counsel and provides a constitutional basis to overcome the procedural bars of Rule 61. Third, Zebroski contends that he is entitled to a new penalty hearing because the felony murder conviction (which the Superior Court has vacated) prejudiced the outcome of the penalty phase.

Rules 61(i)(2) and (4) provide an exception to the procedural bars when consideration is warranted "in the interest of justice." Rule 61(i)(5) also allows review on the merits, notwithstanding the procedural bar of Rule 61(i)(2), when a colorable claim is made "that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to a judgment of conviction." [2] Because the Superior Court did not address the interest of justice exception, as we defined in *Weedon v. State*,[3] and also because it did not address the Rule 61(i)(5) miscarriage of justice exception to the bar of Rule 61(i)(2), a remand is necessary. We conclude that Zebroski's claim under the Delaware Constitution is moot given the availability of relief under

2. Super. Ct.Crim. R. 61(i)(5).

3. 750 A.2d 521 (Del.2000).

Rule 61 if it is shown that the proceedings leading to the conviction and imposition of a death sentence were unreliable. As to Zebroski's third argument, we affirm the judgment of the Superior Court.

## Facts and Procedural History

On the evening of April 25, 1996, Zebroski, Michael Sarro and Brian Morrise set out to rob a Conoco gas station in New Castle, Delaware. While Zebroski and Sarro were waiting until the gas station was empty of customers, Zebroski took Sarro's semi-automatic handgun so as to assume the role of "enforcer." The two entered the station at approximately 3:00 a.m. and found the attendant, Joseph Hammond, sitting in a chair at the desk. Zebroski pointed the gun at Hammond, and demanded that he open the cash register. Hammond approached the register but did not comply with the demand. Zebroski kept the gun pointed at Hammond, who was standing three to four feet away from Zebroski. Despite threats from Zebroski and Sarro, Hammond remained unresponsive. Sarro then attempted to open the register himself, but his efforts were unavailing. It is undisputed that Zebroski then fired the gun, shooting Hammond in the forehead and killing him instantly.

Following a jury trial, Zebroski was convicted on both counts of first degree murder,[4] one count of attempted robbery first degree, three counts of possession of a firearm during the commission of a felony and one count of conspiracy in the second degree. Following Zebroski's conviction, the Superior Court held a three-day penalty hearing. In its decision, the Superior Court listed 7 aggravating factors presented by the State[5] and 17 mitigating factors presented by Zebroski.[6] At the conclusion of the hearing, the jury voted nine to three that the aggravating circumstances outweighed the mitigating circumstances and recommended that the Superior Court impose a sentence of death. The Superior Court found that the aggravating circumstances qualitatively outweighed the mitigating circumstances, and sentenced Zebroski to death on August 1, 1997.[7]

4. Zebroski was convicted under 11 *Del. C.* § 636(a)(1) and (2) for intentionally causing the death of another and recklessly causing the death of another person in the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefore.

5. Specifically, the Superior Court listed: 1) evidence of the impact of the murder upon friends, family and co-workers of Joseph Hammond; 2) evidence of the defendant's poor criminal history including adjudications of delinquency in Family Court; 3) the defendant's treatment history and previous efforts to rehabilitate him in Family Court; 4) the nature and circumstances surrounding the murder; 5) the defendant's character and propensity for violence and other criminal conduct; 6) the defendant's custody status at the time of the offense. He was on juvenile probation, known as aftercare, when he committed the crime; 7) the defendant's previous intent to victimize the night attendant at the Conoco station. *State v. Zebroski,* 1997 WL 528287, at *11 (Del.Super. August 1, 1997).

6. Specifically, the Superior Court listed: 1) his youth, age 19; 2) family who loves him; 3) comes from a dysfunctional family; 4) mother's alcohol and mental health problems; 5) adverse conditions of childhood development; 6) numerous stepfathers with substance abuse problems; 7) physically abused as a child; 8) mentally abused as a child; 9) observed physical and mental abuse of mother and siblings; 10) desertion of natural father; 11) lack of appropriate male role models; 12) friends who continue to support him; 13) history of psychological problem/disorders as a child and adolescent; 14) history of substance abuse/addiction; 15) debilitating effects of alcohol and drugs on decision making; 16) favorable prognosis for positive adjustment to prison; 17) punishment relative to codefendant. *State v. Zebroski,* 1997 WL 528287, at *11.

7. *State v. Zebroski,* 1997 WL 528287.

We affirmed Zebroski's conviction and sentence on July 28, 1998.[8] On December 10, 1998, Zebroski filed a *pro-se* motion for post conviction relief. The Superior Court appointed new counsel for Zebroski. The new counsel filed an amended motion for postconviction relief, and requested leave to expand the record and for a hearing. The Superior Court granted the request, and after a full evidentiary hearing and formal briefing, Superior Court denied Zebroski's Rule 61 motion on August 31, 2001.[9] Zebroski appealed, and the parties exchanged briefing and participated in oral argument on May 14, 2002. On June 7, 2002, this Court stayed further proceedings "pending issuance of the decision in *Arizona v. Ring.*[10]" On June 24, 2002, the United States Supreme Court issued a decision in the *Ring v. Arizona,*[11] and this Court lifted the stay. We affirmed the Superior Court's denial of Zebroski's motion for post conviction relief on May 14, 2003.[12] The United States Supreme Court denied Zebroski's petition for *writ of certiorari* on October 6, 2003.[13]

On September 3, 2003, Zebroski filed a Petition for Writ of Habeas Corpus in the District Court. Zebroski filed his second motion for post-conviction relief on November 4, 2003. On December 8, 2003, the Superior Court stayed consideration of Zebroski's second motion for post-conviction relief pending the resolution in the United States District Court of Zebroski's federal habeas action. On February 15, 2008, the Superior Court appointed Jennifer–Kate Aaronson, Esquire to represent Zebroski in his Superior Court proceedings. On July 1, 2008, Zebroski filed a "Motion to Reopen Postconviction Relief". On March 19, 2009, the Superior Court denied Zebroski's ineffective assistance of counsel claims under the procedural bars of Rule 61(i)(2) and (4), but vacated Zebroski's conviction for felony murder.[14] This appeal followed.

### Procedural Bars to Zebroski's Rule 61 Motion

Rule 61(i) provides four procedural bars with exceptions:

Rule 61(i)(1) Time limitation—A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.

Rule 61(i)(2) Repetitive Motion—Any ground for relief that was not asserted in a prior postconviction proceeding ... is thereafter barred, unless consideration of the claim is warranted in the interest of justice.

Rule 61(i)(3) Procedural Default—Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred.

Rule 61(i)(4) Former adjudication—Any ground for relief that was formerly adju-

8. *Zebroski v. State,* 715 A.2d 75 (Del.1998).

9. *State v. Zebroski,* 2001 WL 1079010 (Del.Super. August 31, 2001).

10. 200 Ariz. 267, 25 P.3d 1139 (2001), *cert. granted sub nom. Ring v. Arizona,* 534 U.S. 1103, 122 S.Ct. 865, 151 L.Ed.2d 738 (2002).

11. 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

12. *Zebroski v. State,* 822 A.2d 1038 (Del.2003.)

13. *Zebroski v. Delaware,* 540 U.S. 933, 124 S.Ct. 352, 157 L.Ed.2d 240 (2003).

14. *State v. Zebroski,* 2009 WL 807476 (Del.Super. March 19, 2009).

dicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

Rule 61(i)(5) Bars inapplicable—The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.[15]

■ Zebroski contends that the Superior Court erred in ruling his claim of ineffective assistance of trial counsel was procedurally barred by Superior Court Rule 61(i)(2) and (4).[16] We review the Superior Court's denial of a motion for post-conviction relief for abuse of discretion.[17] Questions of law are reviewed *de novo.*[18] We review claims of a constitutional violation *de novo.*[19]

The Superior Court summarized Zebroski's claims of ineffective assistance of trial counsel as follows: (1) trial counsel was ineffective in investigating and presenting mitigating evidence;[20] (2) trial counsel failed to call thirteen specific witnesses, including Defendant's elementary school guidance counselor, to present mitigating evidence; (3) trial counsel failed to object to the court's using a presentence investigation containing mitigating evidence not presented to the jury; (4) trial counsel was ineffective by unreasonably and prejudicially stipulating to Sarro's statement and thereby conceding Defendant's guilt to felony murder.[21]

■ Although the Superior Court held that Zebroski's motion was barred by Rule 61(i)(2) and (4), both provisions provide for relief from a procedural default when reconsideration is warranted "in the interest of justice."[22] The Superior Court held that Zebroski's claim of ineffective assistance "fails at the threshold" because he did not have a right to counsel in his postconviction proceeding.[23] That finding

---

15. Super. Ct.Crim. R. 61(i)(1)-(5).

16. Zebroski previously argued trial counsel was ineffective because (1) trial counsel failed to request an expansive, open-ended *voir dire* of prospective jurors; (2) trial counsel failed to properly investigate and present a mitigation case in the penalty phase; (3) trial counsel failed to handle Zebroski's capital defense without the assistance of other counsel, particularly "in view of trial counsel's already heavy caseload; and (4) the information gathering process for mitigation evidence began far to late for Zebroski to receive a fair penalty hearing. *Zebroski v. State,* 822 A.2d at 1043.

17. *Outten v. State,* 720 A.2d 547, 551 (Del. 1998) (citing *Dawson v. State,* 673 A.2d 1186, 1190 (Del.1996)); *Gattis v. State,* 955 A.2d 1276, 1280–82 (Del.2008).

18. *Id.*

19. *Hall v. State,* 788 A.2d 118, 123 (Del.2001) (citing *Warren v. State,* 774 A.2d 246, 251 (Del.2001)).

20. Specifically, Defendant claims counsel failed to: explore Defendant's ADHD diagnosis and its neurological effect; address Defendant's age as it relates to neuro-developmental immaturity; address Defendant's drug use and its effect on his pre-existing brain dysfunction and mental illness; complete a thorough social history and records investigation; present evidence of Defendant's absent father and the resulting neglect; present evidence about Sarro's character; thoroughly investigate Defendant's criminal record; present Defendant's rehabilitation efforts in prison; and plea for mercy.

21. *State v. Zebroski,* 2009 WL 807476, at *2.

22. *See* Super. Ct.Crim. R. 61(i)(2) and (4).

23. *State v. Zebroski,* 2009 WL 807476, at *6.

does not address the broader issue presented by the interest of justice exception.

The Superior Court denied all of these claims as barred by Rules 61(i)(2) and (4) in one concise paragraph:

> Defendant is barred under Rule 61(i)(4) because the court adjudicated ineffective assistance of counsel claims in Defendant's first postconviction motion. Defendant argued several claims against trial counsel, all of which were dismissed by this court and affirmed on appeal. Defendant fails to show that further review is required in the interests of justice. Again, if Defendant presented something truly striking, that would be one thing. Failing that, however, Defendant invites an endless series of motions that mostly second-guess previous motions.[24]

We have recognized the importance of finality in criminal litigation and especially in the context of capital litigation.[25] Balanced against that interest, however, is the important role of the courts in preventing injustice.[26] We have previously interpreted Rule 61's "interest of justice" provision as based on the "law of the case" doctrine.[27] We have explained:

> In determining the scope of the "interest of justice" exception, we recognize two exceptions to the law of the case doctrine. First, the doctrine does not apply when the previous ruling was clearly in error or there has been an important change in circumstances, in particular the factual basis for issues previously posed. Second, the equitable concern of preventing injustice may trump the "law of the case" doctrine.[28]

A conclusory statement that the defendant failed to show that further review is required in the interests of justice does not address whether the circumstances contemplated by *Weedon* exist in this case. Nor did the Superior Court address the additional exception provided by Rule 61(i)(5). Zebroski has raised all of these exceptions in his arguments to this Court on appeal. Each should be adequately addressed by the Superior Court in the first instance. Accordingly, we remand this matter to the Superior Court for further proceedings to determine whether Zebroski's ineffective assistance of counsel claims satisfy the exceptions to the procedural bars of Rule 61. In examining those claims the Superior Court should consider recent decisions by the United States Supreme Court, the United States Court of Appeals for the Third Circuit and the United States District Court for the District of Delaware.[29]

### Zebroski's Delaware Constitutional Claim is Moot

Zebroski argues that Article I, Section 7 of the Delaware Constitution[30] guarantees a death sentenced defendant

**24.** *Id.*, at *6.

**25.** *See Flamer v. State,* 585 A.2d 736, 745 (Del.1990).

**26.** *See Weedon v. State,* 750 A.2d at 527.

**27.** *Id.*

**28.** *Id.* at 527–28 (citations omitted).

**29.** *Smith v. Spisak,* —— U.S. ——, 130 S.Ct. 676, 175 L.Ed.2d 595 (2010); *Outten v. Kearney,* 464 F.3d 401 (3d Cir.2006); *Anker v. Wesley,* 670 F.Supp.2d 339 (D.Del.2009).

**30.** Article I, Section 7 of the Delaware Constitution provides "In all criminal prosecutions, the accused hath a right to be heard by himself or herself and his or her counsel, to be plainly and fully informed of the nature and cause of the accusation against him or her, to meet the witnesses in their examination face to face, to have compulsory process in due time, on application by himself or herself, his or her friends or counsel, for obtaining witnesses in his or her favor, and a speedy and public trial by an impartial jury; he or she shall not be compelled to give evidence against himself or herself, nor shall he or she be deprived of life, liberty or property, unless by the judgment of his or her peers or by the law of the land."

the right to the effective assistance of counsel on post-conviction when counsel is appointed by the Superior Court pursuant to Rule 61(e)(1) [31] and (*l*)(3) [32] and that this provides a constitutional basis to overcome the procedural bars of Rule 61.[33] We find this argument to be moot, given the availability of relief under Rule 61. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial *cannot be relied on as having produced a just result.*"[34] Such a circumstance, if established to the satisfaction of the Supe-

rior Court, would satisfy both the interest of justice exception and the miscarriage of justice exception under Rule 61. Even if the Delaware Constitution provides the right Zebroski claims, nothing is added to the analysis. Accordingly, Zebroski's claim under the Delaware Constitution is moot.[35]

### Reversal of felony murder conviction does not require a new penalty hearing

■ Zebroski next contends that the Superior Court's reversal of the felony

31. Rule 61(e)(1) provides: "The court will appoint counsel for an indigent movant only in the exercise of discretion and for good cause shown, but not otherwise. Unless the judge appoints counsel for a limited purpose, it shall be the duty of counsel to assist the movant in presenting any substantial ground for relief available to the movant ..."

32. Rule 61(*l*)(3) provides: "When the time for seeking certiorari to review the Supreme Court's order affirming a sentence of death expires or, if the defendant seeks certiorari, when the United States Supreme Court issues a mandate or order finally disposing of the case, the court shall promptly schedule a session with the defendant and defense counsel to determine the status of representation. Counsel who represented the defendant at trial or on appeal may not represent the defendant in the postconviction proceeding permitted by this subdivision unless the defendant and counsel request continued representation. The court may not grant the request without addressing the defendant personally in open court and determining that the defendant understands that the request for continued representation constitutes a waiver of the right to claim that counsel's representation at trial or on appeal was ineffective. If the defendant requests the appointment of new counsel, the court shall promptly rule on that request."

33. There is no right to the effective assistance of postconviction counsel under the Sixth Amendment. *Coleman v. Thompson,* 501 U.S. 722, 755, 111 S.Ct. 2546, 115 L.Ed.2d 640

(1991). States are divided on whether there is a postconviction right to the effective assistance of counsel under their respective rules, statutes or constitution. Some jurisdictions have recognized such a right. *See Young v. State,* 724 So.2d 82, 83 (Ala.Cr.App.1998); *Small v. Comm'r of Corr.,* 286 Conn. 707, 946 A.2d 1203 (2008); *Dunbar v. State,* 515 N.W.2d 12, 14–15 (Iowa 1994); *Crump v. Warden,* 113 Nev. 293, 934 P.2d 247, 253 (1997); *State v. Velez,* 329 N.J.Super. 128, 746 A.2d 1073, 1076 (Ct.App.Div.2000); *Johnson v. State,* 2004 ND 130, 681 N.W.2d 769 (N.D. 2004); *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, 303 (1999); *Jackson v. Weber,* 637 N.W.2d 19 (S.D.2001). Other jurisdictions have not recognized such a right. *See King v. State,* 808 So.2d 1237, 1245 (Fla. 2002); *Gibson v. Turpin,* 270 Ga. 855, 513 S.E.2d 186, 189–92 (1999); *People v. Davis,* 156 Ill.2d 149, 189 Ill.Dec. 49, 619 N.E.2d 750, 756 (1993); *State v. Hunt,* 262 Neb. 648, 634 N.W.2d 475 (2001); *Dotta v. Maass,* 91 Or.App. 222, 754 P.2d 36, 37 (1988); *House v. State,* 911 S.W.2d 705, 712–13 (Tenn.1995); *Ex parte Graves,* 70 S.W.3d 103 (Tex.Crim. App., 2002). *See also* Andrew Hammel, *Effective Performance Guarantees for Capital State Post-conviction Counsel: Cutting the Gordian Knot,* 5 J.App. Prac. & Process 347 (2003).

34. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (emphasis added).

35. *State v. Mancari,* 223 A.2d 81, 82–83 (Del. 1966) (the law is well settled that our courts will not lend themselves "to decide cases

murder conviction requires that his death sentence also be vacated. Specifically, he argues that the penalty phase instructions either (1) directed a verdict in favor of the State on the aggravating circumstances as to each conviction, or (2) was confusing to the jurors because they told the jury that it had already found the statutory aggravator to exist for the intentional murder count.

 An individual is guilty of first degree felony murder when "while engaged in the commission of . . . any felony," the person recklessly causes the death of another.[36] In *Williams v. State*,[37] we held that "[f]elony murder cannot attach unless the murder is a consequence of the felony and is intended to help the felony progress."[38] This "in furtherance of" element must be properly explained in the jury instructions to establish a felony murder conviction.[39] Here, the jury was not so instructed and the Superior Court vacated Zebroski's felony murder conviction.

The Superior Court held that:

"Although the jury was instructed to automatically find an aggravating factor after a guilty felony murder finding, the jury was further instructed to decide separately whether there was a statutory aggravating factor for Defendant's intentional murder conviction. The jury unanimously found Defendant's attempted robbery to be an aggravating factor to Defendant's intentional murder conviction."[40]

The Superior Court held that the State proved beyond a reasonable doubt that robbery was Zebroski's seminal intent because Zebroski admitted as much.[41] Therefore, although the evidence may not have supported the "in furtherance of" requirement for felony murder, the jury was properly instructed on whether the State had proven the statutory aggravating factor that the murder occurred "while Defendant was engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any degree of . . . robbery. . . ."[42]

In *Flamer v. State*,[43] this Court held that the "defendant's death sentence need not be vacated because one of several aggravating circumstances has subsequently been held to be invalid."[44] Further, "the evidence considered by the jury in making its determination was not constitutionally objectionable. Therefore, we deem any error in considering the invalid statutory circumstance as harmless."[45]

Here, the jury's consideration of evidence pertaining to the robbery conviction was similarly not "constitutionally objectionable." Accordingly, any error in considering the invalid statutory circumstance is harmless beyond a reasonable doubt.[46]

---

which have become moot, or to render advisory opinions.").

36. 11 *Del. C.* § 636(a)(2).

37. 818 A.2d 906 (Del.2002).

38. *Id.* at 912.

39. *See, e.g., Claudio v. State*, 958 A.2d 846, 851 (Del.2008).

40. *State v. Zebroski*, 2009 WL 807476, at *4.

41. *Id.*

42. *Id.* (citing 11 *Del. C.* § 4209(e)(1)(j)).

43. 490 A.2d 104 (Del.1983).

44. *Id.* at 132.

45. *Id.* at 136. After Flamer's conviction but before the appeal was heard by this Court, we decided in *State v. Chaplin*, 433 A.2d 327 (Del.1981), that the "outrageously or wantonly vile" statutory aggravating circumstance was unconstitutionally vague. The question before this Court in *Flamer* was the impact of the jury considering such an aggravating factor in imposing a death sentence.

46. *See Van Arsdall v. State*, 524 A.2d 3 (Del. 1987).

We agree with the Superior Court's holding that a reversal of the felony murder conviction does not require a new penalty hearing for Zebroski.

## Conclusion

The judgment of the Superior Court is **AFFIRMED IN PART** and this matter is **REMANDED** for further proceedings consistent with this opinion. Jurisdiction is retained.