IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEFFREY PHILLIPS, | § | |
| | § | No. 359, 2019 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID No. 1210013272(N) |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: February 19, 2020
Decided: March 25, 2020

Before **SEITZ**, Chief Justice; **VAUGHN**, and **TRAYNOR**, Justices.

## <u>**ORDER**</u>

This 25th day of March, 2020, having considered the briefs and the record below, it appears to the Court that:

(1)     The police arrested Jeffrey Phillips and Otis Phillips, who are unrelated, for gang-related murders and assaults. A jury convicted Jeffrey of most of the crimes charged, but acquitted him of one charge and reduced two others. The Superior Court judge sentenced Jeffrey to life plus seventy-two years in prison. On direct appeal, this Court affirmed his convictions. A Commissioner denied Jeffrey's motion for postconviction relief, which the Superior Court adopted. Jeffrey now appeals from the Superior Court's denial of postconviction relief. After a careful

review of the record and the Superior Court's decisions, we find that the court did not abuse its discretion, and affirm the convictions.

(2)    In 2008, Herman Curry witnessed a murder in a nightclub.[1]    He identified Otis as the shooter.  On July 7, 2012, Kelmar Allen, the state's primary witness against Jeffrey,[2] removed Jeffrey from a nightclub after an altercation with another gang member, which resulted in gunfire and a death.  Allen testified that the next morning, he saw Jeffrey and other members of the "Sure Shots" gang at a home gathering guns and ammunition.  Allen believed they were angry and wanted to find the rival gang members from the nightclub shooting.

(3)    On July 8, 2012, Curry and Alexander Kamara were shot and killed at a soccer tournament in Wilmington's Eden Park.  Police suspected that "Sure Shots" gang members, Jeffrey and Otis, were involved.  One witness identified Otis as Curry's shooter and Jeffrey as Kamara's shooter.  Another witness saw Jeffrey and Otis get into a gold car and saw another man approach the car and shoot the driver.  Shortly after, police found the car crashed nearby with the semi-conscious driver bleeding and a gun on the rear seat.  Police arrested Jeffrey and Otis after a brief standoff.  Jeffrey had a gunshot wound in the leg and Otis was carrying a gun and

---

[1] Unless otherwise specified, facts are taken from this Court's opinion in *Phillips v. State*, 154 A.3d 1146 (Del. 2017).

[2] Allen claimed that Jeffrey was a member of the "Sure Shots" gang, had a gun given to him by the gang leader, and was a willing participant in the shootings.  Prior to Jeffrey's trial, Allen pleaded guilty to gang participation.  The judge sentenced him to time served and Level III probation.

ammunition in his pocket.  Police searched the car and found guns and a ball cap, which contained Otis's DNA.  Carl Rone, the State's ballistics expert, determined that gun casings from the park were from the guns found in the car.

(4)     Police charged Jeffrey with two counts of Murder in the First Degree, Attempted Murder in the First Degree, Gang Participation, Conspiracy in the First Degree, Reckless Endangering in the First Degree, four counts of Possession of a Firearm During the Commission of a Felony, Riot, Conspiracy in the Second Degree, Disorderly Conduct, two counts of Assault in the Third Degree, and Criminal Mischief.

(5)     Before trial, the Superior Court granted the State a protective order under Superior Court Criminal Rule 16(d) that prohibited defense counsel from disclosing to their clients, friends, family, and associates of their clients, and the employees of counsel, any identity or statements of cooperating co-defendants. The court granted some relief later that allowed counsel to discuss the witness identification and statements with their staff and then full relief from the protective order after jury selection, ten days before trial.[3]

(6)     Jeffrey also moved to sever his trial because the State filed more charges against Otis.  The court denied the motion.  During trial, Jeffrey sought again

---

[3] *State v. Phillips*, 2019 WL 1110900, at *2 (Del. Super. Mar. 11, 2019) (Commissioner's Report).

to sever based on antagonistic defenses because he and Otis would pursue different cross-examination strategies. The Superior Court denied the renewed motion.

(7) One of the State's witnesses was Carl Rone, a ballistics expert. Rone testified that the bullet casings found at the Eden Park shooting matched the guns found in the car that Jeffrey and Otis used to flee the scene. Years after Jeffrey's trial, Rone pleaded guilty to theft. Rone admitted that, during 2016-17, he falsified records to receive additional compensation for work he did not perform.

(8) The jury convicted Jeffrey of most charges, but reduced the Attempted First Degree Murder to Manslaughter, the Criminal Mischief charge to Disorderly Conduct, and acquitted him of the Third Degree Assault and Second Degree Conspiracy charges. The judge sentenced him to life plus seventy-two years in prison. Jeffrey filed a direct appeal, where he argued, in relevant part, that the Superior Court "denied him the right to effectively prepare for trial by granting the State's protective order," and "erred in refusing to grant severance from a joint trial with Otis."[4] This Court affirmed.[5]

(9) Jeffrey then filed a timely *pro se* motion for postconviction relief. The court appointed counsel, who filed an Amended Motion for Postconviction Relief. In his motion Jeffrey argued that (i) the court's protective order rendered his counsel

---

[4] *Phillips*, 154 A.3d at 1150.
[5] *Id.*

4

ineffective because counsel could not communicate meaningfully with Jeffrey about trial strategy until ten days before trial; (ii) his trial counsel was ineffective because trial counsel should have handled the motions to sever differently; and (iii) he was entitled to a hearing to determine whether, based on Rone's guilty plea in 2018, Rone was committing wrongdoing at the time of trial and tainted the case because his testimony was critical.

(10)　A Superior Court Commissioner issued a report and recommendation to deny the postconviction motion,[6] which the Superior Court adopted.[7]  The report found that even though Jeffrey's first two claims are couched as ineffective assistance of counsel claims, they were effectively challenges to the Superior Court protective order rulings and therefore barred under Superior Court Criminal Rule 61(i)(4) as previously adjudicated.  Further, even if they were not barred, the Commissioner found the ineffective assistance of counsel claims failed under *Strickland v. Washington* [8] because counsel's representation was objectively reasonable and Jeffrey failed to show any actual prejudice.  The report notes that the trial judge instructed the jury to consider the evidence separately, and the jury's verdict demonstrates that they followed the instructions carefully when they convicted him on reduced charges and acquitted on other charges.  Finally, the

---

[6] *Phillips*, 2019 WL 1110900.

[7] Opening Br. Ex. A.

[8] 466 U.S. 668 (1984).

Commissioner dismissed Jeffrey's claim regarding Rone's 2016-17 criminal charges because there was no evidence of Rone's wrongdoing at the time of Jeffrey's trial in 2014 and Jeffrey did not discredit the remaining trial evidence.

(11) Jeffrey appeals from the Superior Court's decision on each claim. We review the denial of a motion for postconviction relief for an abuse of discretion.[9] We review questions of law and constitutional violations *de novo*.[10]

(12) First, we address the procedural bars in Rule 61(i) and apply the version in effect at the time Jeffrey filed the original motion.[11] A motion for postconviction relief is barred by Rule 61(i)(1) if filed more than one year after the final conviction; by Rule 61(i)(2) if not asserted in a prior postconviction relief motion, if applicable; by Rule 61(i)(3) if procedurally defaulted; and by Rule 61(i)(4) if formerly adjudicated. Rule 61(i)(5) has an exception to the first four procedural bars if the defendant claims that the court lacked jurisdiction, pleads with particularity that new evidence exists that strongly infers the movant's innocence, or pleads with particularity that a new rule of constitutional law applies and renders the conviction invalid.

---

[9] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).
[10] *Zebroski v. State*, 12 A.3d 1115, 1119 (2010).
[11] Super. Ct. Crim. R. 61(i); *Bradley v. State*, 135 A.3d 748, 757 (Del. 2016). Jeffrey filed his motion for postconviction relief on April 10, 2017, after the current, 2017 version went into effect.

6

(13) Jeffrey's first claim—that the trial court's protective order ruling rendered his counsel ineffective—can no longer be pursued if couched as a backdoor way of challenging the substance of the court's protective order ruling. Jeffrey raised that issue earlier, and under Rule 61(i)(4), he cannot relitigate the same issue in postconviction proceedings. We will, however, consider his claim that trial counsel was ineffective under the constraints of the lawfully imposed protective order.

(14) His second claim—that his trial counsel was ineffective because he filed the protective order motion too late and should have raised the confusion caused by the defendants' identical last names—is not procedurally barred as previously adjudicated and will be addressed later in this order.

(15) For his last claim, Jeffrey argues that he should have been permitted to investigate the State's ballistics expert, Rone, following his later theft conviction because if Rone committed theft earlier and the jury knew about it at trial, then the jury might have assessed his testimony differently. The Commissioner and Superior Court appear to have applied Rule 61(i)(3).[12] On appeal, Jeffrey invokes Due

---

[12] The Commissioner found that "presumably [Jeffrey] is requesting consideration of this issue either as an additional claim of ineffective assistance of counsel and/or pursuant to Rule 61(i)(3)(A)&(B)." *Phillips*, 2019 WL 1110900, at *6 n.46. The Commissioner also found that Rone's conviction for filing false time sheets does not meet the "new evidence" exception because it does not create a strong inference that Jeffrey is actually innocent of the charges. *Id.*

7

Process rights and the "interests of justice."[13] But Rule 61(i)(3) bars "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction" unless the movant shows cause for relief from the procedural default and prejudice from a violation of the movant's rights.[14] Because challenging the credibility of trial testimony properly occurs during the trial, Jeffrey's claim is procedurally barred unless he showed cause for relief from the procedural default and prejudice from a violation of his rights.

(16) Turning to the substance of Jeffrey's claims that are not procedurally barred, counsel was constitutionally ineffective if (1) trial counsel's representation fell below an objective standard of reasonableness, and (2) "counsel's actions were prejudicial, i.e., there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would be different."[15] If Jeffrey fails to meet either prong of the test, his claim fails.[16] There is a "strong presumption that counsel's conduct falls within the wide range" of reasonableness.[17] Further,

---

[13] Opening Br. at 29. Jeffrey does not argue ineffective assistance of counsel or the new evidence exception.
[14] Super. Ct. Crim. R. 61(i)(3)(A)–(B).
[15] *Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992) (citing *Strickland*, 466 U.S. at 668).
[16] *Strickland*, 466 U.S. at 697.
[17] *Id.* at 689.

"counsel need not advance every argument the defendant wishes to raise, regardless of merit."[18]

(17)   Jeffrey argues that "it was impossible" for trial counsel to work through the 1100 pages of witness statements while also preparing for trial within the allotted timeframe.[19]  But Jeffrey does not allege that trial counsel was unprepared for trial. And Jeffrey does not argue that effective representation would have caused trial counsel to change trial strategy or examine witnesses differently.  It was also within the trial court's discretion to decide whether to hold an evidentiary hearing.[20]

(18)   Next, Jeffrey argues that timing of the motion to sever for antagonistic defenses constituted ineffective assistance of counsel because it was "too late and [] completely foreseeable."[21]  According to Jeffrey, trial counsel "should have foreseen that Jeffrey and Otis would point the finger at each other."[22]  Jeffrey does not, however, show how he suffered prejudice because of the alleged ineffective representation.  Prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[23]  "A

---

[18] *Scott v. State*, 7 A.3d 471 (Del. 2010) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985), *reh'g denied*, 470 U.S. 1065 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).
[19] Opening Br. at 12.
[20] Super. Ct. Crim. R. 61(h) ("the judge shall determine whether an evidentiary hearing is desirable").
[21] Opening Br. at 20.
[22] *Id.* at 22.
[23] *Strickland*, 466 U.S. at 687, 694.

9

reasonable probability is a probability sufficient to undermine confidence in the outcome."[24]  It requires more than some "conceivable effect on the outcome of the proceeding," but less than showing the unreasonable conduct "more likely than not altered the outcome in the case."[25]

(19)  Trial counsel repeatedly moved for a mistrial and for severance, cross-examined witnesses, and obtained curative and limiting instructions.  While counsel could have filed the motion earlier, Jeffrey does not articulate why the court might have granted the motion if it had been filed earlier, and how an earlier filed motion would have had a greater chance of success.

(20)  Next, Jeffrey argues that counsel was ineffective for failing to "articulate the possibility of prejudice because the defendants had the same last name."[26]  Jeffrey argues that sharing the same last name with Otis "was very significant," and "in the context of a gang case, people with the same last name can be confused or improperly 'linked' because there is an assumption that they are related."[27]

(21)  Jeffrey concedes, however, that the jury was informed twice that the defendants were unrelated, and the State also explained that Otis was from Guyana

---

[24] *Id.* at 694.
[25] *Id.* at 693.
[26] Opening Br. at 23–24.
[27] *Id.* at 24–25.

10

and Jeffrey was from Jamaica.[28] Nothing in the record supports the theory that the jury might have inferred they were related. The court instructed the jury to weigh the evidence individually and render separate verdicts for each defendant, which they did. The jury here appears to have carefully sorted out the evidence, as it acquitted Jeffrey on some charges and reduced others. Jeffrey does not provide other evidence that the jury failed to follow instructions or apply the law correctly. Because Jeffrey's claim fails the *Strickland* prejudice prong, it is without merit.

(22) Finally, Jeffrey argues that criminal charges filed in May 2018 against Rone, the State's ballistics expert, tainted his case. The Commissioner found that Rone's alleged misconduct occurred in 2016 and 2017, Jeffrey's trial was held in 2014, and there is no evidence of misconduct by Rone from 2012 to 2014. The Commissioner also found that Jeffrey's conviction did not turn on Rone's testimony because there were multiple testifying eyewitnesses who identified Jeffrey as one of the shooters. And the Commissioner looked to this Court's affirmance of the conviction that found "this was not a 'close case' and the evidence against [Jeffrey] was 'overwhelming.'"[29] Because Jeffrey did not sufficiently discredit the remaining evidence, the Commissioner found he did not meet his burden to justify relief. The Superior Court agreed.

---

[28] *Phillips*, 2019 WL 1110900, at *6.

[29] *Id.* at *7 (quoting *Phillips*, 154 A.3d at 1154, 1161, 1163, 1164, 1166).

11

(23) On appeal, Jeffrey argues that he should have been afforded an evidentiary hearing to expand the record to determine whether Rone's conduct went back to the time of Jeffrey's trial. According to Jeffrey, Rone's testimony was crucial to his conviction because it linked one of the guns in a way that implicated Jeffrey, it identified the shell casings near the scene of the crime, and the casings were critical because no bullets were found. And because Rone's testimony was allegedly crucial, Jeffrey asserts that challenging his credibility could have affected the verdict. Finally, Jeffrey argues that Rone's fraudulent conduct is a specific act of "untruthfulness" that may be explored under evidentiary rules, and, if Rone was committing fraudulent activity prior to testifying, he was incentivized to agree with the State.

(24) Jeffrey has not demonstrated an abuse of discretion by the trial court. Under Rule 61(i)(3), Jeffrey's claim is barred unless he shows cause for relief and prejudice from a violation of his rights. In other words, Jeffrey must show "an external impediment prevented him from raising the issue earlier," and "actual prejudice resulting from the alleged error."[30] But Jeffrey does not show that there is an issue that should have been raised earlier—instead he seeks a hearing to determine if an issue challenging Rone's credibility exists. Rone's charges included providing

---

[30] *Terrero-Ovalles v. State*, 211 A.3d 1107, 2019 WL 2355019, at *2 (Del. June 3, 2019) (TABLE).

false timesheets during 2016 and 2017,[31] and Jeffery's trial was held in 2014. The court did not abuse its discretion when it found no evidence of misconduct by Rone at the time of trial because that is what Jeffery seeks to find in a hearing. Even assuming there is cause for relief, the court did not abuse its discretion by finding that Jeffrey did not show actual prejudice. We are unpersuaded by Jeffrey's arguments for why this case "turn[ed] on Rone's testimony"[32] because, as the Commissioner found, there were multiple witnesses who testified about identification and this Court found it was not a close case. Nor does Jeffrey show that the Superior Court abused its discretion when it found that Jeffrey did not discredit the remaining trial evidence to show prejudice. Even if Rone's testimony was critical, however, Jeffrey does not show that the later fraud—lying about time sheets for undeserved payment—bears any relation to the subject of his testimony.[33] Jeffrey also concedes that with the information at trial, "Rone's credibility was vigorously challenged, based on the dubious scientific validity of his methodology and his lack of current credentials."[34] Last, it is within the court's discretion to

---

[31] Answering Br. at 23 (Rone pleaded guilty to theft by false pretense and falsifying business records in 2018.).

[32] Opening Br. at 32.

[33] *See State v. Pierce*, 2018 WL 4771787, at *4 (Del. Super. Oct. 1, 2018) (The Superior Court held an evidentiary hearing regarding Rone's credibility and found that falsification of records seeking extra pay and falsification of documents relating to evidence logs are significantly dissimilar and are based on different motivations).

[34] *Phillips*, 2019 WL 1110900, at *7.

decide whether to hold an evidentiary hearing.[35] Like the Commissioner's report stated, "the purpose of a motion for postconviction relief is not to conduct a fishing expedition into the possible conduct of a witness."[36] The court did not abuse its discretion by denying an evidentiary hearing.

NOW, THEREFORE IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[35] Super. Ct. Crim. R. 61(h) ("the judge shall determine whether an evidentiary hearing is desirable").

[36] *Phillips*, 2019 WL 1110900, at *6.