# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) I.D. No. 1904020542
)
JOSEPH SERAMONE, )
)
Defendant. )

Submitted: August 2, 2023
Decided: August 18, 2023

*Upon Defendant Joseph Seramone's Motion for Postconviction Relief*
**DENIED**

## <u>MEMORANDUM OPINION</u>

Cari Chapman, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, DE 19801, Attorney for State of Delaware.

Joseph Seramone, SBI #818550, Delaware DOC – 1101, P.O. Box 96777, Las Vegas, NV 89193, Defendant, *pro se*.

**WHARTON, J.**

# I.     INTRODUCTION

The Defendant, Joseph Seramone ("Seramone"), pled guilty to rape second degree. The Court sentenced him to life imprisonment. Dissatisfied with his sentence, he first sought a sentence reduction. That attempt failed. Now he claims he is entitled to postconviction relief because he was induced to plead guilty by ineffective counsel who misled him and failed to adequately investigate and present his case. After carefully considering Seramone's arguments, his attorney's affidavit, the State's position, and the record in this case, it is obvious to the Court that Seramone's dissatisfaction is not with his counsel, but with the Court's sentence. He has provided no basis for the relief he seeks and the Court does not grant him any.

# II.     FACTUAL AND PROCEDURAL BACKGROUND

Seramone pled guilty to rape in the second degree on June 28, 2022.[1] In the plea agreement, the State agreed to recommend no more than the 25-year minimum mandatory sentence at Level V required by statute.[2] After a presentence investigation was completed, the Court sentenced Seramone to life on October 7, 2022.[3] Seramone did not appeal to the Delaware Supreme Court. Instead, on December 27, 2022, he moved for a reduction of his sentence.[4] The Court denied that request on January 6, 2023.[5]

---

[1] D.I. 27.
[2] *Id.*
[3] D.I. 28.
[4] D.I. 29.
[5] D.I. 30.

2

This Motion for Postconviction Relief ("PCR Motion") pursuant to Superior Court Criminal Rule 61, Seramone's first, was filed timely on February 23, 2023.[6] The motion raises a claim of ineffective assistance of counsel ("IAC").[7] The Court engaged in the preliminary consideration of the application required under Rule 61(d)(1) and found that, consistent with Rule 61(g), the postconviction record must be expanded to include additional materials relevant to the determination of Seramone's motion.[8] Accordingly, on May 1, 2023 the Court ordered Seramone's trial/plea counsel, Michael W. Modica, Esquire ("Modica") to respond to the allegations."[9] Modica submitted his affidavit in response on May 30, 2023.[10] On June 20th, Seramone submitted another Motion for Postconviction Relief[11] with accompanying Memorandum of Law.[12] The Court advised Seramone that it would consider this second motion as a supplement to his original pending motion.[13] The State submitted its Response on July 3rd.[14] Finally, Seramone submitted his Response to State's Answer on August 2nd.[15]

## III. THE PARTIES' CONTENTIONS

---

[6] Def.'s PCR Mot., D.I. 31.
[7] *Id.*
[8] D.I. 36.
[9] *Id.,* Super. Ct. Crim. R. 61(g)(2).
[10] Modica Aff., D.I. 44.
[11] D.I. 38.
[12] D.I. 39
[13] D.I. 41.
[14] State's Resp., D.I. 42.
[15] Def.'s Reply, D.I. 43.

In his original PCR Motion, Seramone alleges that Modica was ineffective in representing him by: (1) feeding him "misinformation and delusions of grandeur;" (2) doing no background investigation of the case; (3) failing to present a psychological examination showing that he was a low recidivism risk; (4) failing to discuss his version of the events with him; (5) failing to question the lack of a physical examination of the victim or the lack of any DNA or physical evidence against him; (6) failing to be present with him at the pre-sentence investigation interview despite promising to be with him; and (7) providing inadequate advice regarding an appeal and breaking his promise to remain in touch with him after sentencing.[16] Seramone's supplemental PCR Motion includes a Memorandum of Law which sets out in greater detail his allegations of ineffective assistance of counsel.[17] Generally, however, he alleges that his plea was not voluntarily and knowingly made, and but for counsel's bad advice, misleading representations, and inadequate investigation, he would not have pled guilty, but rather, would have elected to exercise his right to trial.[18]

Modica provided the Court with a detailed affidavit in response to Seramone's IAC allegations. In it, he reviews the background to his representation of Seramone.[19] Seramone was originally represented by Eugene J. Maurer, Jr. Esquire ("Maurer"), but Maurer learned of a conflict of interest and was allowed to withdraw.[20] As a

---

[16] D.I. 31.
[17] Def.'s Mem. of Law, D.I. 39.
[18] *Id.*
[19] Modica Aff., D.I. 44.
[20] *Id.* at ¶ 1.

result, the trial, which was scheduled for March 3, 2021, was rescheduled.[21] Modica entered his appearance on March 30th.[22]

Shortly thereafter, Modica obtained Maurer's file and thoroughly reviewed its contents and conducted legal research regarding the law applicable to the allegations.[23] Maurer's file included: (1) the arrest warrant and affidavit of probable cause; (2) the indictment; (3) the State's discovery responses dated August 27, 2019 and November 1, 2019 which included police reports, transcripts of witness statements, three "BWC" videos,[24] search warrants, DNA litigation packet, Seramone's handwritten letter; (4) summaries of transcribed statements; (5) Maurer's correspondence file; and (6) Maurer's notes.[25]

Modica met with Seramone in person at Howard R. Young Correctional Institution ("HRYCI") on March 28, 2022, June 13, 2022, and October 5, 2022, and possibly on one other occasion.[26] Modica communicated with the assigned prosecutor, and explored alternatives to the State's plea offer, but was advised that the offer was firm.[27]

---

[21] *Id.*
[22] *Id.* at �𝕡 2.
[23] *Id.* at ⌡ 3.
[24] "BWC" stands for Body Worn Camera.
[25] Modica Aff. at ⌡ 3, D.I. 44.
[26] *Id.* at ⌡ 5.
[27] *Id.* at ⌡ 7.

Modica's affidavit contains his evaluation of the case. In his view, the State had a very strong case.[28] He based this opinion on his review of the evidence, especially the video statement of the victim, which Modica found very credible.[29] In addition, the State provided the defense with a letter Seramone wrote to his son prior to Modica being retained to represent him that contained a number of incriminating statements, while also denying culpability in other portions of his correspondence.[30] In another letter to counsel dated June 1, 2022, Seramone suggests that the victim was influenced to lie by family members and/or was abused by someone else.[31] However, that same letter contains a number of admissions.[32]

---

[28] *Id.* at ⁋ 8.

[29] *Id.*

[30] *Id.* at ⁋ 9. ("'I decided not to take it to Court and be judged by a Jury because I could not put you or the victim through being torn apart in court, it would be too hard on you, and her. I've done enough damage." "The more accurate charge would be Rape IV, which is described as unwanted Sexual touching of the chest, face, thigh or buttocks, No Friggin digital penetration." "I have no excuse for what I did, I was wrong, I regret how many times I crossed the line of good and decent, and regretful and narcissistic." "I was hurt by an adult, early in life. I acted out in a similar fashion as what happened to me.'").

[31] *Id.* at ⁋ 11.

[32] *Id.* ("'the timeframe the prosecutor has is 100% wrong also. It started in December of 2015 and lasted until May of 2018, 10x in total. Not 7 or 8 years like they have alleged." The truth is [the victim] asked, 'Poppy can you rub me' whenever she wanted to be 'rubbed.' As I rubbed her back or legs she would move my hand to her genitals or have her pants pulled down under her covers and pull my hand to her genital area to 'rub me here (sp?)' she would say" 'I made a stupid mistake, why do I have to pay for it with my life.'"

Modica discusses Seramone's decision to plead guilty. Modica thoroughly reviewed the plea offer with Seramone who understood his options.[33] He understood that he could accept or reject the offer and that if he accepted it, the Court was not bound by the State's recommendation and he could be sentenced to life in prison.[34] Seramone recognized the reality of his situation and never seriously expressed a desire to reject the offer and proceed to trial.[35]

Modica then addresses specific allegations of ineffectiveness. With respect to each he "rejects" the allegation that he was ineffective or that there is any basis to conclude that Seramone was prejudiced.[36]

Modica states he is unable to respond specifically to Seramone's allegation that Modica "fed him misinformation and delusions" because Seramone does not identify the misinformation and delusions to which he refers, but denies that he ever provided Seramone with any misinformation.[37]

Similarly, Modica states that Seramone's lack of specificity regarding Modica's failure to perform an adequate background investigation leaves him speculating about what Seramone is alleging.[38] Modica surmises that Seramone is referring to allegations contained in his June 1st letter.[39] Modica did not feel it

---

[33] *Id.* at ¶ 13.
[34] *Id.*
[35] *Id.* at ¶ 12.
[36] *Id.* at ¶¶ 15, 17, 22, 24, 26, 29.
[37] *Id.* at ¶ 14.
[38] *Id.* at ¶ 16.
[39] *Id.*

necessary to investigate those claims in light of Seramone's stated desire to plead guilty and in light of the incriminating statements Seramone made in his letters to his son and to Modica.[40]

Regarding Seramone's claim that he did not "bring up a psychological evaluation concluding that he had a low risk of recidivism," Modica responds that he spoke to the evaluator who advised him that she had other "serious concerns based on her interview."[41] She was concerned because: (1) the sex abuse was premeditated and not impulsive; (2) Seramone's behavior was not the result of distorted thinking; and (3) Seramone believed he was gratifying the victim and that his behavior was not about self-gratification.[42] Given these concerns, Modica did not request a written report from the evaluator.[43] Further, Modica perceived that the Court's sentence was influenced more by Seramone's conduct in this case than his future risk of recidivism.[44]

Modica denies that he was ineffective in failing to question Seramone about the charges.[45] He states that Seramone volunteered much of the same information to him when they met as he wrote in his June 1st letter.[46] Modica believes he understood

---

[40] *Id.*
[41] *Id.* at ¶ 19.
[42] *Id.*
[43] *Id.* ¶ 20.
[44] *Id.* at ¶ 21.
[45] *Id.* at ¶ 22.
[46] *Id.*

Seramone's position regarding the allegations against him and any potential trial defenses.[47]

Modica disputes Seramone's claim that he "never did any work at all, and failed to consider there was no exam of the alleged victim, no physical evidence, no DNA evidence…"[48] Modica states that he was fully aware of all of those considerations.[49]

Modica does not recall promising Seramone that he would attend his presentence interview, but notes that Seramone followed the instructions he gives clients to accept responsibility, express remorse, and try not to shift blame to the victim.[50]

Finally, in response to Seramone's claim that he "failed to follow up with him after he was sentenced," Modica attaches a copy of a letter he wrote to Seramone dated October 17, 2022, discussing his post-sentencing options.[51]

The State submitted its Response on July 3, 2023.[52] The State acknowledges that, as a timely first postconviction relief motion, alleging claims of IAC, none of the procedural bars of Rule 61(i) apply and the Court may consider the motion on the merits.[53]

---

[47] *Id.*
[48] *Id.* at 25.
[49] *Id.*
[50] *Id.* at ¶ 27.
[51] *Id.*
[52] State's Resp., D.I. 42.
[53] *Id.* at 5.

9

In general, the State' position tracks Modica's affidavit. Specifically, as to Seramone's claim that Modica fed him "misinformation and delusions of grandeur," the State contends that the claim lacks particularity, is vague and without concrete support.[54] As a result, Seramone has failed to offer any evidence of "misinformation" or "delusions of grandeur" to support the performance deficiency or prejudice prongs of *Strickland*.[55]

Similarly, the State argues that Seramone's claim that Modica failed to conduct an adequate background investigation fails for vagueness.[56] He offers no details on what a proper investigation would reveal or how the absence of one prejudiced him.[57] Accordingly, in the State's view, this claim fails both *Strickland* prongs as well.[58]

The State maintains that Seramone has failed to meet his burden to demonstrate that Modica's decision to forego using a psychological report purporting to show he was a low risk of reoffending was objectively unreasonable and that, but for Modica's decision, the result of the proceeding would have been different.[59] This claim fails because the other unfavorable content a written report would have included would have harmful to Seramone.[60]

---

[54] *Id.* at 8.
[55] *Id.*
[56] *Id.* at 9.
[57] *Id.*
[58] *Id.*
[59] *Id.* at 10-11.
[60] *Id.* at 11.

The State argues that Seramone's claim that Modica failed to question him about the case, including his version of the facts, fails to meet both prongs of *Strickland*.[61] Not only did Modica understand the case and Seramone's version of the facts, but Seramone has failed to demonstrate that he would not have pled guilty if Modica understood more about the case or asked him more questions.[62]

The State maintains that Seramone's claim that Modica failed to consider that the State's case lacked physical evidence, DNA evidence or a physical examination of the victim not only contradicts Modica's statement that he explained to Seramone that this was a "late report" case, but fails to explain how the alleged error of counsel would have changed his decision to plead guilty.[63]

Finally, the State contends that Seramone's final two claims – that Modica failed to attend his presentence interview with him or visit him after sentencing – fail to demonstrate concrete allegations of prejudice or substantiate that Modica was ineffective.[64] Seramone's contention that his guilty plea was akin to a "coerced confession" is clearly contradicted by the record.[65]

---

[61] *Id.* at 12.
[62] *Id.*
[63] *Id.* at 12-13.
[64] *Id.* at 13.
[65] *Id.*

In reply, Seramone states that he was misled by counsel into believing he would only receive a 25-year sentence.[66] Had he been told he was going to be sentenced to life, he would have gone to trial.[67]

## IV.  STANDARD AND SCOPE OF REVIEW

Rule 61 is the exclusive remedy for those "in custody under a sentence of this court seeking to set aside the judgment of conviction…"[68] This Rule balances finality "against … the important role of the courts in preventing injustice."[69]

Before addressing the merits of a defendant's motion for postconviction relief, the Court must first apply the procedural bars of Superior Court Criminal Rule 61(i).[70] If a procedural bar exists, then the Court will not consider the merits of the postconviction claim.[71] Under Delaware Superior Court Rules of Criminal Procedure, a motion for postconviction relief can be barred for time limitations, repetitive motions, procedural defaults, and former adjudications. A motion exceeds time limitations if it is filed more than one year after the conviction becomes final or if it asserts a newly recognized, retroactively applied right more than one year after it was first recognized.[72] A second or subsequent motion is repetitive and

---

[66] Def.'s Reply, at 1, D.I. 43
[67] *Id.* at 2.
[68] Super. Ct. Crim. R. 61(a)(1).
[69] *Zebroski v. State*, 12 A.3d 1115, 1120 (Del. 2010) (citation omitted).
[70] *Younger v. State,* 580 A.2d 552, 554 (Del. 1990).
[71] *Id.*
[72] Super. Ct. Crim. R. 61(i)(1).

therefore barred.[73]  The Court considers a repetitive motion only if the movant was convicted at trial and the motion pleads with particularity either: (1) actual innocence;[74] or (2) the application of a newly recognized, retroactively applied rule of constitutional law rendering the conviction invalid.[75]  Grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred as procedurally defaulted unless the movant can show "cause for relief" and "prejudice from [the] violation."[76]  Grounds for relief formerly adjudicated in the case, including "proceedings leading to the judgment of conviction, in an appeal, in a post-conviction proceeding, or in a federal habeas corpus hearing" are barred.[77]  Additionally, "[t]his Court will not address claims for post-conviction relief that are conclusory and unsubstantiated."[78]

To successfully bring an IAC claim, a claimant must demonstrate: (1) that counsel's performance was deficient; and (2) that the deficiencies prejudiced the claimant by depriving him or her of a fair trial with reliable results.[79]  To prove counsel's deficiency, a defendant must show that counsel's representation fell below

---

[73] Super. Ct. Crim. R. 61(i)(2).
[74] Super. Ct. Crim. R. 61(d)(2)(i).
[75] Super. Ct. Crim. R. 61(d)(2)(ii).
[76] Super. Ct. Crim. R. 61(i)(3).
[77] Super. Ct. Crim. R. 61(i)(4).
[78] *State v. Guinn,* 2006 WL 2441945, at *4 (Del. Super. Aug 16, 2021). *See also Gattis v. State*, 697 A.2d 1174, 1178-79 (Del. 1997); *Younger,* 580 A.2d at 556; *State v. McNally,* 2011 WL 7144815, at *5 (Del. Super. Nov. 16 2011); *State v. Wright,* 2007 WL 1982834, at *1 n.2 (Del. Super. July 5, 2007).
[79] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

an objective standard of reasonableness.[80]  Moreover, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[81]  "[A] court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[82]  A successful Sixth Amendment claim of IAC requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[83]  When addressing the prejudice prong of the IAC test in the context of a challenged guilty plea, an inmate must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[84]

An inmate must satisfy the proof requirements of both prongs to succeed on an IAC claim.  Failure to do so on either prong will doom the claim and the Court need not address the other.[85]

Seramone's PCR Motion together with his supplemental Memorandum of Law constitute a first timely motion under Rule 61 alleging IAC.  Accordingly, it is

---

[80] *Id.* at 667-68.

[81] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[82] *Strickland*, 446 U.S. at 689.

[83] *Id.* at 694.

[84] *Albury v. State,* 551 A.2d 53, 59 (Del. 1988) (citing *Hill v. Lockhart,* 474 U.S. 52, 58 (1985)); *Sartin v. State,* 2014 WL 5392047, at *2 (Del. Oct. 21, 2014); *State v. Hackett,* 2005 WL 30609076, at *3 (Del. Super. Ct. Nov. 15, 2005).

[85] *Strickland,* 466 U.S. at 697; *Ploof v. State,* 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.").

not subject to any of the bars of Rule 61(i) and, therefore, the Court addresses it on the merits.

## V.    DISCUSSION

The Court begins with the plea colloquy between the Court and Seramone. The terms of the plea agreement, as explained by the State, were that Seramone would plead guilty to rape second degree, the State would enter *nolle prosequis* on the remaining charges in the indictment, request a presentence investigation, and recommend no more than the 25-year minimum mandatory sentence at Level V required by 11 *Del. C.* § 4205(a)(2).[86] Modica then confirmed that Seramone understood the plea agreement, the State's recommendation, the required minimum mandatory sentence, the maximum sentence of life, and the constitutional rights he was waiving by entering the plea.[87]

The Court began its colloquy with Seramone by asking him to tell the truth, which he agreed to do.[88] He agreed that everything the State and Modica said was truthful.[89] After the Court read the rape second degree charge to Seramone, he told the Court that he understood the charge, and was pleading guilty to it because he was guilty of it.[90]

---

[86] Tr. Plea Hr'g., June 28, 2022, at 2.
[87] *Id.* at 3.
[88] *Id.* at 4.
[89] *Id.*
[90] *Id.* at 4-5.

The Court then addressed the Truth-In-Sentencing Guilty Plea Form with Seramone.[91]  He told the Court that he understood all of the questions on the form and that he answered the questions "accurately and truthfully."[92]  After discussing his constitutional trial rights with him the Court's colloquy turned to topics pertinent here:

> THE COURT:  Your attorney went over the maximum penalty, which is 25 years to life for this charge.  Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Has anyone promised you anything to enter into this guilty plea?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Has anyone forced you or threatened you to enter into this plea?
>
> THE DEFENDANT:  No.[93]

The Court then returned to the plea agreement:

> THE COURT:  The proposed sentenced is that the State agrees to recommend no more than 25 years, minimum mandatory, unsuspended Level 5 pursuant to 11 *Del. C.* 4205(a) A small A, 2.  Do you see that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Do you understand it's only a recommendation and that the Court, when you are sentenced, does not have to follow that recommendation?
>
> THE DEFENDANT:  Yes.

---

[91] *Id.* at 5-8.
[92] *Id.* at 5-6.
[93] *Id.* at 7.

THE COURT: Do you understand that, normally, only illegal sentences may be appealed? An illegal sentence is not one – an illegal sentence is one that the law does not allow, not one that is different from the one recommended in the plea agreement.

THE DEFENDANT: Yes.

THE COURT: have you discussed this matter fully with your attorney, including the maximum penalties and other aspects of this plea?

THE DEFENDANT: Yes, I have.

THE COURT: Are you knowingly and voluntarily entering into this plea because you are guilty of rape in the second degree?

THE DEFENDANT: Yes.[94]

At the conclusion of the colloquy, the Court was satisfied that Seramone's plea was knowingly, voluntarily, and intelligently made and that Seramone understood the nature and consequences of it.[95] The Court then accepted the plea.[96]

The foregoing record clearly demonstrates that Seramone was fully aware that the sentencing court was not bound by the State's recommendation of 25 years of unsuspended Level V imprisonment and could legally impose a sentence of up to life imprisonment. Nonetheless, he decided to plead guilty. "With or without the witness oath, a defendant's statements to the Superior Court during the guilty plea

---

[94] *Id.* at 8-9.
[95] *Id.* at 9.
[96] *Id.*

colloquy are presumed to be truthful."[97] The defendant's representations, as well as the findings of the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings."[98] Absent clear and convincing evidence to the contrary, Seramone is bound by his representations during the plea colloquy and on the Truth-In-Sentencing Guilty Plea Form.[99] Seramone has presented no such clear and convincing evidence to the contrary and, thus, he is bound by his representations to the judge who accepted his plea and the answers he provided on the Truth-In-Sentencing Guilty Plea Form. Those answers include his affirmation that he was satisfied with Modica's representation of him and that Modica fully advised him of his rights.[100]

At sentencing, Seramone offered an apology:

> I brought a lot of hurt to a lot of people who I love, and I say that I'm sorry, especially to [the victim], who is the sweetest, kindest soul that you'll ever meet. I took advantage of her innocence and her trust, and I regret that every single day. There's not a day that goes by that I don't regret my actions and I wish that I could take them back.[101]

> *       *       *

> I'd like to say that I understand that my actions are just unfathomable and I am very, very sorry for it, and I'm very

[97] *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997).
[98] *Id.* (citing *Voytik v. Unites States,* 778 F.2d 1306, 1308 (8th Cir. 1985)(quoting *Blackledge v. Allison,* 431 U.S. 63, 74(1977)).
[99] *Palmer v. State,* 2022 WL 871024, at *2 (Del. Mar. 23, 2022)(citing *Somerville v. State*, 703 A.2d at 631).
[100] Truth-In-Sentencing Guilty Plea Form, D.I. 27.
[101] Tr. Sentencing Hr'g., Oct. 7, 2022, at 18.

sorry to [the victim] and I regret everything that I've done.[102]

Seramone statements at his plea colloquy and at his sentencing make it impossible for him to gainsay his guilt. The Court finds any attempts to do so in his PCR Motion, either directly or inferentially, unworthy of credit.

The Court now turns to Seramone's specific allegations of ineffectiveness against Modica. As between Modica's recitation of facts and Seramone's contrary factual allegations, the Court accepts Modica's and rejects Seramone's. It does so because Seramone's allegations are inconsistent with his representations to the judge who accepted his plea and his answers on the Truth-In- Sentencing Guilty Plea Form, by which he is bound. Additionally, in this collateral proceeding, he has failed to overcome the "formidable barrier" presented by those representations and the finding of the judge who accepted his guilty plea that it was knowingly, voluntarily, and intelligently made.

Seramone styles the basis of his claim for relief a "Coerced Confession or Guilty Plea & Ineffective Counsel."[103] He complains that Modica misled him into pleading guilty by feeding him "misinformation and delusions of grandeur," and supplements that contention in his Memorandum of Law. He further complains that Modica failed to discuss his version of events with him, and failed to question the lack of a physical examination of the victim, DNA evidence, and incriminating

---

[102] *Id.* at 19.
[103] Def.'s PCR Mot., D.I. 31.

19

physical evidence.  But, as the plea colloquy establishes, while he might have hoped for or anticipated a 25-year sentence, Seramone knew well that he could receive a life sentence despite the State's recommendation.  He was neither misinformed, nor deluded by Modica about that prospect.  Further, he knew as well as Modica that there was no physical examination of the victim, the State lacked  DNA evidence, and there was no physical evidence incriminating him.  Yet, he still pled guilty because, as he acknowledged, he was guilty.  The Court finds that Seramone has failed to meet both the performance deficiency and prejudice prongs as required under *Strickland* to establish IAC related to his pre-plea claims.

It is unclear whether Seramone views the psychological evaluation purporting to show him to be a low recidivism risk to be a pre-plea mitigator to be used in plea negotiations or a post-plea sentencing mitigator.  In either case, Modica's decision not to make use of it was reasonable and Seramone suffered no prejudice from that decision.  The evaluation was mixed – Seramone's low recidivism risk was clearly offset by serious concerns the evaluator had about him.  Moreover, to the extent Modica's decision to forego presenting the Court with the evaluation prejudiced Seramone, that prejudice was undercut by the fact that the Court was aware at sentencing that an assessment tool administered to Seramone showed him to present a low risk of re-offending.[104]  There is no reason to believe that the evaluation would

---

[104] MR. [sic] CHAPMAN:  "…There is also a Static-99.  For the life of me I still have not figured out what is involved with the Static-99 risk assessment, but it

20

have moved the State to re-think its firm plea offer or that it would have affected the Court's sentence. Modica is correct that the Court's sentence was driven by Seramone's conduct in this case and not by the unlikelihood of future offenses. Thus, Seramone has not established either *Strickland* prong.

Seramone's final two allegations of ineffectiveness deal with Modica's conduct post-plea. Both involve claims that Modica broke a promise to him. It is immaterial whether Modica promised to attend Seramone's presentence interview. The bar for an objective standard of reasonableness is not set so high as to require an attorney's presence at the presentence interview. Again, Seramone has failed to show prejudice as a result of the claimed performance deficiency.

Similarly, Seramone claims that Modica broke his promise to visit him post-sentencing and failed to give him adequate advice about submitting an appeal. Again an objective standard of reasonableness does not require post-sentencing visits by counsel. Modica did provide Seramone with his advice about the likely success of an appeal. Seramone has not demonstrated how that advice prejudiced him. In particular, he has not identified any arguably meritorious issue he would have presented had he filed a direct appeal. The Court assumes there were no such issues because the only issue he raise in his PCR Motion is IAC.

## VI.   CONCLUSION

_____

indicates that he is categorized as low risk…" Tr. Sentencing Hr'g., Oct. 7, 2022, at 15.

For the reasons set out above, Defendant Joseph Seramone's Motion for Postconviction relief is **DENIED.**

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.
